1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

| | |
|---|---|
| ELIZABETH BINION, | 1:11-cv-02128 LJO GSA |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| MICHAEL ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

17

18

## **BACKGROUND**

19    Plaintiff Elizabeth Binion ("Plaintiff") seeks judicial review of a final decision of the

20  Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21  supplemental security income benefits pursuant to Title XVI of the Social Security Act.  The

22  matter is currently before the Court on the parties' briefs, which were submitted, without oral

23  argument, to Magistrate Judge Gary S. Austin, for findings and recommendations to the District

24  Court.

25  //

26  //

27

28                                    1

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed an application for benefits in April 2006, alleging disability as of January 28, 1998.  *See* AR 15.  Plaintiff's application was denied initially and on reconsideration; she then requested a hearing before an Administrative Law Judge ("ALJ").  AR 31, 36-41, 43-48. ALJ Howard K. Treblin held a hearing after remand by the Appeals Council,[2] and subsequently issued an order denying benefits on February 26, 2009, finding Plaintiff was not disabled.  AR 15-24.  On October 20, 2011, the Appeals Council denied review of the 2009 decision.  AR 5-7.

### Hearing Testimony

#### September 21, 2007

ALJ Treblin held a hearing on September 21, 2007, in Stockton, California.  Plaintiff appeared and testified; she was assisted by attorney Jeffrey Milam.  AR 305-325.

On the date of the hearing, Plaintiff was fifty-two years old.  She is five feet five inches tall and weighs 181 pounds.  She previously weighed 201 pounds but her physician placed her "on a drastic diet" to address her cholesterol.  AR 308.  Plaintiff is married and lives with her husband and another woman and her baby in a trailer.  AR 310, 318.  She graduated high school and can read and write and can perform simple math calculations.  AR 310.

Plaintiff has a valid driver's license and drives short distances.  However, after driving for a half hour she needs to take a break.  AR 309.  Her hands tighten up due to arthritis.  AR 309-310.

In May 2001 Plaintiff stopped working as a certified nursing assistant after she was injured on the job.  She was assisting a patient at the time, and suffered a torn rotator cuff.  AR 310.  Although she has had surgery, she still has problems in both shoulders.  AR 310-311.  The

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[2] ALJ James M Mitchell previously determined Plaintiff was not disabled in findings dated April 18, 2005. AR 150-158.  Moreover, ALJ Treblin previously determined Plaintiff was not disabled in findings dated December 12, 2007. AR 165-173.

shoulder pain feels as though "someone is stabbing [her] with a knife." AR 322. She also suffers from back pain, with pain radiating down into her buttocks and legs. AR 311. She feels pain all of the time, but does not take any pain medication. AR 313. The back pain is a sharp pain. AR 322. Additionally, she has pain in her right knee and also suffers from asthma. AR 311. Moreover, Plaintiff has problems with both hands; she is right-handed and that hand is worse than the left. AR 312. Her hands also swell. AR 322. She has also suffered from chest pain for the past six months and has used nitroglycerin. AR 312. Her left ear has been injured "somehow" and she has problems "hearing things so [she has] to look at people" to ensure she understands what they are saying. AR 313. She does not have a hearing aid. AR 313. No surgery has been planned for any of Plaintiff's medical conditions. AR 313.

When asked why she did not take medication to treat the pain she feels constantly, Plaintiff indicated that she has diverticulitis and the pain medications cause constipation and thus "it's not good for [her] large intestines." AR 313. The medications she does take relate to her heart condition. AR 313-314. She feels pain all of the time and has more bad days than good days. On a scale of one to ten, Plaintiff indicated her pain on a bad day is a nine; on a good day it is about a six. AR 314. She spends a couple hours a day lying down, however, it does not help. AR 314. Movement increases the pain and her conditions are worsening. AR 314-315. Plaintiff has seen her physician once a month for the past two to three months. Prior to that, she had seen the doctor six months earlier. AR 315. Transportation has been an issue in the past, and some days Plaintiff just "hurts too bad" to go out. AR 323.

Plaintiff cannot lift a gallon of milk with one hand. She could do so if she used both hands. AR 315. She cannot lift over her head. AR 315. Neither can she use her arms to reach forward. AR 322. Plaintiff estimated that she could perform work that required reaching forward for less than one-third of a workday. AR 323. Further, Plaintiff estimated she could sit for fifteen to twenty minutes at one time with pain. AR 315-316. She could stand or walk for about fifteen to twenty minutes. While she does not use a cane to get around, Plaintiff does use a

1  knee brace on her right knee every few months.  AR 316.  She cannot bend over from a standing

2  position and touch her toes, but she could reach past her knees.  AR 316-317.  Plaintiff estimated

3  that she could use her hands for about fifteen minutes before needing a break of about half an

4  hour.  AR 320.

5  When asked specifically about her hands, Plaintiff indicated her hands "tighten up" and

6  she does not want to bend her fingers.  She cannot grasp, and she does drop things.  AR 317.

7  Writing with a pen or pencil "would cause problems" and using a "knife and fork together would

8  be really kind of hard" for her.  AR 317.  She has difficulty with buttons that are small, but does

9  not have any difficulty with zippers.  AR 317-318.  Plaintiff does have difficulty attending to her

10  personal hygiene as a result of the pain in her shoulders and hands.  AR 319.

11  Concentration has been a problem recently because she is having problems with her

12  memory.  AR 318.  She does not sleep well, getting about four hours of sleep a night.  AR 318.

13  She does not feel rested when she wakes in the morning.  AR 318-319.

14  A typical day involves getting up and taking her medications and feeding the dog, and

15  "nothing else after that."  AR 319.  She does not do chores as her roommate does the cleaning.

16  AR 319.  If she were to clean, her hands would cramp up after five to ten minutes.  AR 319.  She

17  does not do laundry.  AR 320.  She does cook meals, rather than just using the microwave.  AR

18  319-320.  Plaintiff gets assistance with washing dishes and grocery shopping.  AR 320.  She no

19  longer gardens like she used to.  AR 320.

20  Plaintiff restricts her access to the outdoors as a result of her asthma.  Tree pollen affects

21  her and requires her to use the inhalers more often.  AR 321.  Acid reflux is a problem about

22  twice a week and lasts all day.  Even if she's taken the medication to treat it, sometimes it does

23  not resolve until the next day.  AR 321-322.  The burning sensation is felt in her chest and throat

24  and into her back.  AR 322.

25

26

27

28                                                       4

**2008 Hearing**

ALJ Treblin held a second hearing on August 27, 2008, in Stockton, California. Plaintiff appeared and testified; she was again assisted by attorney Jeffrey Milam. Vocational Expert ("VE") Stephen Schmidt also testified. AR 326-352.

On the date of the second hearing, Plaintiff was fifty-three years old. She weighed 159 pounds and had lost weight as a result of the diet imposed by her physician. AR 329. Plaintiff lives with her husband in a travel trailer; her husband receives Social Security benefits. AR 339.

Plaintiff has a driver's license and drives infrequently. She takes a medication to treat vertigo and driving is prohibited because the medication causes drowsiness. Her husband drove her to the hearing. AR 329-330.

Although she last worked as a certified nursing assistant in May 2001, she did work briefly - about three months - as a delivery driver for the Meals on Wheels program. The position was temporary, for four hours a day, three to four days a week. AR 331. However, she last worked in that capacity in 1993 or 1994. AR 332. She stopped working as a certified nursing assistant after injuring her left arm and shoulder while assisting a patient. AR 332. Both shoulders cause her problems. AR 332.

Both hands cause Plaintiff difficulty, the right more so than the left. AR 332-333. She has pain in her fingers and wrists as well. AR 333. She suffers from back pain that travels down her buttocks. AR 333. She continues to suffer from knee pain as well. AR 333. The knee pain is an issue when she tries to bend or go up stairs. AR 344. As she has for several years, Plaintiff continues to use an inhaler for shortness of breath. AR 333-334. Although she has difficulty hearing with her left ear, she does not use a hearing aid. AR 334. Plaintiff was recently diagnosed with a goiter and is taking thyroid medication; surgery for this condition is likely in September. AR 334.

Plaintiff does not take pain medication because she suffers from diverticulitis and constipation and pressure are not good for her, despite the fact she is in pain at all times. AR

335.  She has more bad days than good days.  On bad days, the pain is between and eight and nine on a scale of one to ten, and on good days the pain is between a four and five.  AR 335.  She continues to spend about two hours a day lying down.  AR 335.  She believes her conditions and symptoms are getting worse.  AR 335-336.

A side effect of the thyroid medication is that it makes Plaintiff feel "spacey" and she has difficulty concentrating, sometimes just "staring off into space."  AR 336.  She is tired all of the time and has difficulty remembering things.  AR 336.  Additionally, within the last six months, Plaintiff has been having trouble getting along with others.  She argues with people she knows for no good reason.  AR 336.  She is short tempered and irritable.  AR 337.

Plaintiff has recently begun seeing an orthopedist for her back.  AR 337.  Her back pain is constant.  AR 344.  She ices her back twice a day for about ten minutes.  AR 345.  Plaintiff does not use a cane.  AR 337, 344.  She uses an ankle brace on her right ankle recently because she tore a ligament in May.  AR 337-338, 345.

Plaintiff estimated she can lift and carry seven to eight pounds.  AR 338. She cannot reach or lift over her head, nor can she reach in front of her because of her shoulders.  AR 338, 342-343.  Reaching out to her sides bothers her on the right.  AR 343.  She cannot bend.  AR 338.  Plaintiff indicated she can sit comfortably for about fifteen minutes at a time, and can stand and/or walk for twenty to thirty minutes at a time.  AR 338.

As a result of the problems with her hands, Plaintiff is unable to hold onto objects without dropping them.  AR 338-339.  When she writes or uses utensils, her hands cramp and cause her pain. She can use her hands for about ten minutes before they begin to cramp.  AR 339.  She has trouble with buttons and zippers.  AR 339.  Squeezing an exercise ball does not help, however, because it will cause her hand to "cramp up more."  AR 346.

Plaintiff does not sleep well, waking every three to four hours.  AR 339.  She bathes or showers every three to four days because propane to heat water in the travel trailer is expensive.  AR 340.  She is able to cook a meal about once a week.  AR 340.

When asked to describe a typical day, Plaintiff indicated that she gets up in the morning, takes her medications, takes the dog outside, then goes back in to eat breakfast.  AR 340-341. She tries to go for a short walk because her doctor advised her it was good for her heart, and she also uses a stationary bike, riding two miles per day.  She estimated it takes her fifteen to twenty minutes to go two miles.  AR 341.  Her daughter takes her grocery shopping or she has a "Dial-A-Ride" take her to the store.  AR 341.  She does not do light cleaning or dusting, but she does the dishes and makes her bed.  AR 341.  Her husband does the cleaning.  AR 341.  She does not read the newspaper, books, or magazines.  She does watch television.  AR 342.  When asked what type of hobbies or activities she has had to stop, Plaintiff indicated she used to hike and mountain climb.  AR 342.

VE Schmidt identified Plaintiff's past work as (1) a nurse's aide, DOT[3] 355.674-014, medium with an SVP[4] of four; and (2) deliverer, DOT 299.477-010, medium with an SVP of two.  AR 347.

In the first hypothetical question, the VE was asked to consider an individual of Plaintiff's age, education and experience, who is able to perform light work which would include lifting and/or carrying ten pounds frequently and twenty pounds occasionally, who could stand and/or walk for six hours in an eight-hour day, and sit for two hours in an eight-hour day, who can only bend or stoop occasionally, and who is precluded from reaching overhead bilaterally, but who retains the ability to reach, finger, and grasp.  AR 347.

VE Schmidt indicated such an individual would be unable to perform Plaintiff's past work.  AR 347.  However, such an individual could perform the following work: (1) cashier, DOT 211.462-010, light with an SVP of two, with approximately 90,000 jobs available in California; (2) information clerk, DOT 237.367-018, light with an SVP of two, with about 9,000

---

[3]"DOT" refers to the Dictionary of Occupational Titles.

[4]"SVP" refers to Specific Vocational Preparation.

7

jobs available in California; and (3) semi-conductor worker, DOT 590.684-034, light with an SVP of two, with approximately 32,000 jobs in California.  AR 347-348.

VE Schmidt was then asked to consider the same worker and limitations as those posed in the first hypothetical, along with the additional limitation to avoid high concentrations of dust, fumes, odors, environmental irritants, and smoke.  AR 348.  The VE indicated that the individual could also perform the alternative work previously identified.  AR 348.

When VE Schmidt was asked to add yet another limitation, that the individual avoid dangerous moving machinery and unprotected heights; the VE indicated that the same jobs remain available to such an individual.  AR 348.

Adding yet another limitation to the original hypothetical, the VE was asked to consider an individual who could only occasionally grasp, finger and reach.  That individual would be unable to perform the alternative jobs VE Schmidt had previously identified.  AR 348.  Moreover, no other work could be performed with such a limitation because a worker must have more than occasional use of both hands.  AR 348.

When the ALJ added a final limitation to the original hypothetical, that the individual was unable to reach forward or straight ahead at the shoulder level, VE Schmidt indicated that such an individual would be unable to perform any of the work he previously identified.  AR 348-349.

In a second separate hypothetical, the VE was asked to consider an individual of the same age, education and work experience as Plaintiff, who must lie down for two hours during an eight-hour workday, and who could sit for no more than thirty minutes at a time.  VE Schmidt indicated that no work was available to such an individual.  AR 349.

In a third hypothetical, the VE was asked to consider an individual of the same age, education and work experience as Plaintiff, who could lift seven pounds occasionally and was precluded from reaching forward or overhead bilaterally, who could stand and/or walk for a half hour at one time, and who would need to alternate between sitting, standing and walking, who could occasionally grasp, finger, handle or manipulate with the hands, who could perform simple

tasks while dealing appropriately with the public, coworkers and supervisors, and who would require recumbent breaks for up to two hours in a workday in excess of the rest breaks typically provided.  AR 349.  VE Schmidt indicated no work was available to such an individual.  AR 349-350.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 75-304.  The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 15-24.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 19, 2006.  AR 17.  Further, the ALJ identified status-post left shoulder surgery, status-post right knee arthroscopic surgery, degenerative disc disease, obesity and bilateral shoulder impingement syndrome as severe impairments.  AR 17.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments or combination of impairments did not meet or exceed any of the listed impairments.  AR 17.

Based on his review of the entire record, the ALJ determined that Plaintiff has the RFC to perform light work with a limitation to occasional bending and stooping, and an inability to perform any work requiring overhead shoulder reaching at or above shoulder level.  There was no other limitation regarding the use of hands for grasping, fingering or other reaching.  AR 17-22.

Next, the ALJ determined that Plaintiff was not capable of performing her past relevant work.  AR 22.  Nevertheless, the ALJ determined Plaintiff could perform the work of a cashier, information clerk, and semi-conductor worker.  AR 23.  Thus, the ALJ concluded Plaintiff was not disabled.  AR 23-24.

1

## SCOPE OF REVIEW

2       Congress has provided a limited scope of judicial review of the Commissioner's decision

3   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

4   this Court must determine whether the decision of the Commissioner is supported by substantial

5   evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

6   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

7   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

8   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

9   401.  The record as a whole must be considered, weighing both the evidence that supports and

10  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

11  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

12  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

13  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

14  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

15  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

16  Cir. 1987).

17

## REVIEW

18      In order to qualify for benefits, a claimant must establish that he is unable to engage in

19  substantial gainful activity due to a medically determinable physical or mental impairment which

20  has lasted or can be expected to last for a continuous period of not less than twelve months.  42

21  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

22  such severity that he is not only unable to do her previous work, but cannot, considering his age,

23  education, and work experience, engage in any other kind of substantial gainful work which

24  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

25  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

26  Cir. 1990).

27

28                                                      10

1    Here, Plaintiff argues that the ALJ: (1) improperly relied upon the opinion of S. K.

2  Madireddi, M.D.; (2) gave insufficient reasons to reject the opinion of Plaintiff's treating

3  physician; (3) failed to consider the lay witness testimony; and (4) gave insufficient reasons for

4  rejecting Plaintiff's testimony.  (Doc. 17 at 4-8.)

5                                **DISCUSSION**[5]

6           ***Consideration of Dr. Madireddi's Opinion***

7           Consultative examiner S. K. Madireddi determined Plaintiff was capable of light work.

8  However, Plaintiff argues the ALJ's reliance upon Dr. Madireddi's opinion was improper

9  because the doctor did not review a lumbar spine x-ray taken the same day the consultation was

10 performed, and because the doctor failed to reference a December 2003 nuclear scan of

11 Plaintiff's right wrist and hand.  (Doc. 17 at 4-5.)  The Commissioner contends the ALJ's

12 consideration of Dr. Madireddi's opinion is proper.  (Doc. 20 at 15-18.)

13                         **The Applicable Legal Standards**

14          Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

15 who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

16 (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

17 physicians).  As a general rule, more weight should be given to the opinion of a treating source

18 than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

19 647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another

20 doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

21 1391, 1396 (9th Cir.1991).  Even if the treating doctor's opinion is contradicted by another

22 doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

23

24

_____

25     [5]The parties are advised that this Court has carefully reviewed and considered all of the briefs, including
26 arguments, points and authorities, declarations, and/or exhibits.  Any omission of reference to a specific argument or
   brief is not to be construed that the Court did not consider the argument or brief.

27

28                                11

reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

### S. K. Madireddi, M.D.

On August 7, 2006, board certified internist S. K. Madireddi performed an examination of Plaintiff. *See* AR 97-99. Her chief complaints were her right knee cap, sciatica in her left leg, pain in her left rib cage, right wrist, elbow, left shoulder, low back and both ankles. AR 97. Dr.

12

1   Madireddi's physical examination indicates Plaintiff was sixty-five inches tall and weighed 195

2   pounds.  AR 97.  Plaintiff displayed full range of motion in the cervical spine, with no tenderness

3   or spasms present.  AR 98.  No tenderness was noted in the lumbosacral spine, nor were trigger

4   points or spasms detected.  Straight leg raising on the left was recorded to be painful over the

5   lumbar area, the left buttock and back of the left thigh.  AR 98.

6   　　　Dr. Madireddi's findings regarding Plaintiff's upper extremities reveal a surgical scar

7   over the left shoulder area, flexion and abduction to 105 degrees on either side, and pain on the

8   left side with Neer's test (testing for impingement).  Range of motion was otherwise

9   unremarkable in all other joints and motor strength was 5/5 in all upper extremity motor groups.

10  The doctor detected no other tenderness, atrophy, edema or deformity.  Fine finger movements

11  were normal and fist formation and grip were adequate bilaterally.  Although Plaintiff

12  complained of arthralgias of both elbows, no objective findings were recorded.  Reflexes were

13  2+/4.  AR 98.

14  　　　With regard to lower extremities, Plaintiff complained of right knee pain and some

15  patellofemoral crepitus was detected, however, the doctor noted the range of motion was within

16  normal limits.  Full range of motion was detected in the bilateral hips, knees and ankles.  Motor

17  strength was recorded at 5/5 in all lower extremity muscle groups and no other tenderness,

18  atrophy, edema or deformity was present.  Reflexes were 2+/4.  AR 98.

19  　　　Dr. Madireddi noted Plaintiff complained of tenderness over the left rib cage, and more

20  specifically over ribs seven, eight and nine.  Lung fields were clear.  The findings regarding

21  Plaintiff's heart were normal.  She was able to walk on level ground, but could not heel or toe

22  walk.  AR 98.  Neurologically, the doctor noted no pathological reflexes and no drift of

23  outstretched arms.  Plaintiff was able to get on and off the examination table without difficulty

24  and the Romberg test was negative.  AR 98.

25  　　　The doctor's diagnostic impression included morbid obesity, status post rotator cuff

26  surgery - left shoulder, impingement syndrome of both shoulders, arthralgias of both elbows and

27

28                                               13

1    wrists with normal fine and gross manipulative movements and grip strength in both hands,

2    history of contusion of left ribs with tenderness with no objective findings, history of collapsed

3    left lung, low back pain with questionable sensory radiculopathy of the left lower extremity of L4

4    with no motor deficits, history of arthralgias in both knees and hips, and mild osteoarthritis of the

5    right knee.  AR 99.

6          Dr. Madireddi opined that Plaintiff was capable of sitting for a total of six hours in an

7    eight-hour workday, standing or walking for six hours in an eight-hour workday, lifting and

8    carrying twenty-five pounds infrequently and twenty pounds frequently, with only occasional

9    bending and stooping, and no over the shoulder reaching with either arm.  AR 99.

10                              **ALJ's Finding & Analysis**

11          After summarizing Dr. Madireddi's findings, ALJ Treblin concluded that

12          the opinions of the State agency consultants are consistent with all medical
             evidence and the claimant's testimony.  The opinions show that she does have
13          some medically determinable impairments, but that neither individually nor
             combined do not preclude[] the claimant from any work.  Her reporting of
14          severity, intensity, and frequency of symptoms is inconsistent with the medical
             evidence.

15

16   AR 21.

17          First, Plaintiff complains that Dr. Madireddi "did not reference and apparently did not

18   review the lumbar spine radiographic findings of August 6, 2007."  (Doc. 17 at 4.)  This is not

19   surprising given that Dr. Madireddi's own examination occurred on that same date - August 6,

20   2007.  *Cf.* AR 97 to 100.[6]  Plaintiff then states that because the x-ray reveals degenerative disc

21   disease of L4-L5 and L5-S1 and because Dr. Madireddi did not diagnose degenerative disc

22   disease, the x-ray results "would necessarily have changed the functional assessment."  (Doc. 17

23

24   _____

25          [6]The x-ray of Plaintiff's lumbar spine revealed the following:
                  FINDINGS: The bones are osteoporotic.  Alignment of the lumbar spine is remarkable for
26          some minimal scoliosis.  Vertebral body heights are well maintained.  There is moderate disc space
             narrowing at the L4-L5 and L5-S1 levels.  There is moderate facet hypertrophy in the lower lumbar
27          region.  No fracture, spondylolysis or spondylolisthesis seen.
     AR 100.

28                                        14

1    at 4.)  This however is nothing more than speculation.  Indeed, Plaintiff has provided no legal

2    authority in support of this statement.  Dr. Madireddi's opinion was based upon his own

3    objective examination, the results of which revealed that Plaintiff was able to stand straight

4    without scoliosis, tilt or list.  The doctor detected no tenderness to palpitation over the lumbar

5    spine, nor were trigger points or spasms detected.  Straight left raising on the left was noted to be

6    painful over the lumbar area, left buttock and back of the left thigh.  AR 98.  Dr. Madireddi's

7    objective findings comport with his diagnostic impression of low back pain "associated with

8    questionable sensory radiculopathy of the left lower extremity of L4 with no motor deficits."  AR

9    99.  In sum, the fact that Dr. Madireddi did not review and/or consider the lumbar spine x-ray

10   results obtained the same day he performed his own evaluation is understandable, and in light of

11   the medical record available here, does not necessitate a change to the doctor's functional

12   assessment, despite Plaintiff's claim the contrary.  Morever, the Court notes a subsequent x-ray

13   of the lumbar spine dated July 18, 2008, found "[a]part from osteopenia, the bones, joint spaces,

14   and soft tissues appear normal throughout."  *See* AR 255.

15          Next, Plaintiff contends that Dr. Madireddi did not reference a December 2003 nuclear

16   scan of Plaintiff's right wrist and hand that revealed an "arthritic condition."[7]  Had the doctor

17   done so, Plaintiff argues, he would have understood "the underlying right hand and wrist arthritic

18   processes to set manipulative limitations."  (Doc. 17 at 4.)  However, Plaintiff's argument fails to

19   acknowledge the objective findings obtained by Dr. Madireddi, to wit: normal range of motion in

20   all joints, 5/5 motor strength in all upper extremity motor groups, no tenderness, atrophy, edema

21   or deformity, and no sensory deficits.  Fine finger movements were normal, fist formation and

22   grip were adequate bilaterally, and reflexes were 2+/4 and symmetric bilaterally.  AR 98.

23   Therefore, the doctor's objective findings did not justify the imposition of manipulative

24

25          [7]The wrist nuclear scan of December 30, 2003, found "a relative increase in activity in literally all joints of
26   the [right] hand and wrist with no joint particularly standing out as unique.  There is no particular bone in the right
     hand that shows an increase in activity that would suggest occult fracture."  The impression notes that diffuse joint
27   space involvement in the right hand and wrist "would suggest an arthritic condition."  AR 146, 251, 291.

28                                                    15

limitations.  Notably too, the state agency physicians also found Plaintiff was not limited in the area of handling (gross manipulation), fingering (fine manipulation) or feeling.  AR 105.  Additionally, x-rays taken subsequent to the nuclear scan of Plaintiff's wrist were normal or revealed only moderate osteoarthritis in the fifth finger on the right hand.  AR 111, 268, 274-275.  Finally, Plaintiff fails to identify what manipulative limitations should have been identified and accounted for in Dr. Madireddi's functional capacity assessment.

In conclusion, Dr. Madireddi's opinion is substantial evidence because it is supported by his objective findings on examination.  *See Magallanes v. Bowen*, 881 F.2d at 751.

### *Consideration of Dr. Hoenes' Opinion*

Plaintiff argues ALJ Treblin gave insufficient reasons for rejecting the opinion of her treating physician.  (Doc. 17 at 5.)  The Commissioner asserts the ALJ properly assigned minimal weight to the opinion as it was conclusory and insupportable.  (Doc. 20 at 18-21.)

Russell Hoenes, M.D., Plaintiff's treating physician completed a Questionnaire on August 14, 2008.  More specifically, in response to an inquiry of whether he felt his patient's medical problems precluded any full time work, at any exertional level, Dr. Hoenes replied "no."  In the doctor's opinion, Plaintiff was capable of only sedentary work.  He recorded her primary impairments as "back pain - scoliosis" and indicated that the objective finding upon which he bases his opinion is the "tender paravertebral T-L spine."  Dr. Hoenes opined that Plaintiff was capable of sitting, standing and/or walking for twenty to thirty minutes, without rest, at one time.  He further opined she was capable of sitting, standing and/or walking for twenty to thirty minutes over an eight-hour period.  In response to whether his patient was required to lie down and elevate the legs, Dr. Hoenes indicated Plaintiff should lie down and elevate her legs for two hours total in an eight-hour day.  In reply to a request to "note any additional work limitations," the doctor noted "arthritis in hands."  Lastly, in response to an inquiry concerning the date upon which his patient has been disabled to the degree described, Dr. Hoenes noted "broken back: 1970- ."  *See* AR 204.

16

With regard to this opinion, ALJ Treblin found as follows:

> The undersigned has considered a Physical Questionnaire dated August 14, 2008, represented as being from her treating physician although the name is illegible.  The doctor stated that the claimant is limited to sedentary work only, is able to sit, stand, or walk for no more than 30 minute each during an 8-hour workday, and must lie down and elevate her legs for 2 hours during an 8-hour workday.  She is also limited in her work activities because of arthritis in her hands.  The undersigned gives minimal weight to this opinion.  There is little, if any, medical evidence that supports these conclusions.  The claimant herself testified that she is able to take walks throughout the day and rides a stationary bike for the equivalent of 2 miles.  There is medical evidence suggesting arthritic condition in her right hand, but she has not received treatment for arthritis and is not taking pain medications one would expect if she had severe pain as alleged.  The doctor does not reference any clinical observations other than noting tenderness in the paravertebral area presumably in the thoracic and lumbar area, but does not point to any objective medical evidence that shows injury or defect or any defined cause for pain symptoms.  The claimant has not been prescribed any pain medications for back, lower extremity, upper extremity, arthritis symptoms, or any kind of alleged disabling pain.  She has a thyroid condition, but there is no medical evidence supporting that this is a severe impairment that would in any way limit her ability to work.

AR 22, internal citations omitted.  Because the opinion of Plaintiff's treating physician was contradicted, the ALJ was required to provide specific and legitimate reasons to reject that opinion.  *Murray v. Heckler*, 722 F.2d at 582.

Initially, it must be noted that Plaintiff's assertion that the "ALJ rejected Dr. Hoenes' opinion because the ALJ did not know who he was and could not read his signature" (Doc. 17 at 5) is without merit.  Rather, it is plain the ALJ was merely noting he could not discern the doctor's name because he found it to be illegible although the physician was asked to print his or her name and provide a medical specialty.  *See* AR 204.  In any event, this was obviously not a basis for ALJ Treblin's rejection of Dr. Hoenes' opinion.

Here, ALJ Treblin provided specific and legitimate reasons for affording Dr. Hoenes' August 2008 opinion little weight.  The ALJ cited (1) little, if any, medical evidence in support of the opinion, (2) Plaintiff's contradictory testimony, (3) a lack of treatment or medication for arthritis, and (4) a lack of clinical observations to support the disabling pain alleged by Plaintiff.

The foregoing reasons are proper.  For instance, a lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion.  *Magallanes v. Bowen*, 881 F.2d at 751. Here, the numerous diagnostic studies performed do not support the severity of symptoms as alleged by Plaintiff.  Additionally, the need for conservative treatment suggests a lower level of pain and functional limitation.  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).  Plaintiff does not take pain medication, purportedly because the condition of diverticulitis prevents her from doing so.  Moreover, despite evidence of an arthritic condition, Plaintiff does not obtain treatment for this condition, nor does she take medication to treat arthritis.  The incongruity between a treating physician's opinion and his patient's medical records is also a specific and legitimate reason to discount a treating physician's opinion.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Here, Dr. Hoenes' opinion is inconsistent with his treating records, particularly with regard to limitations on sitting, standing and walking, and any need to lie down for two hours in an eight-hour period.

Notably too, Dr. Hoenes' opinion is contradicted by the opinion of a consultative examining physician.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that contrary opinion of examining source constituted "specific and legitimate reason" for rejecting opinion of a treating source); *Andrews v. Shalala*, 53 F.3d at 1041 ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict").

### *Lay Witness Testimony*

In a two-paragraph argument lacking meaningful analysis, Plaintiff contends her roommate Linda Weber's statement was ignored by the ALJ, and thus the error requires a finding of disability.  (Doc. 17 at 6.)  The Commissioner asserts that while the ALJ did not specifically address the third party statement, his error was harmless.  (Doc. 20 at 21-22.)

1    Lay witness testimony as to a claimant's symptoms or how an impairment affects a

2    claimant's ability to work is competent evidence which the Commissioner must take into

3    account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d

4    915, 919 (9th Cir. 1993).   The ALJ may reject such testimony if he does so expressly, in which

5    case "he must give reasons that are germane to each witness." *Dodrill*, at 919.   The ALJ need not

6    discuss lay witness testimony that pertains to whether or not an impairment exists. *Nguyen v.*

7    *Chater*, 100 F.3d at 1467.   These medical diagnoses are beyond the competence of lay witnesses

8    and therefore do not constitute competent evidence.   20 C.F.R. § 404.1513(a).   However, once an

9    impairment has been established by medical evidence, the extent of the diagnosed impairment

10   may be testified to by the lay witnesses.   20 C.F.R. § 404.1513(e); *Sprague v. Bowen*, 812 F.2d

11   1226, 1232 (9th Cir. 1987).   "If the ALJ gives germane reasons for rejecting testimony by one

12   witness, the ALJ need only point to those reasons when rejecting similar testimony by a different

13   witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing *Valentine v. Comm'r*

14   *Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

15   The lay witness statement at issue here appears in the Administrative Record at page 187

16   and is marked as Exhibit B-6E for purposes of the administrative proceedings.   The statement

17   was provided by Plaintiff's roommate, Linda Weber.   ALJ Treblin does not specifically address

18   the value he assigns this statement, however, the ALJ did note the following: "A statement

19   submitted by another person, Linda Weber, reported that the claimant had difficulty with most

20   activities of daily living because of pain, and had problems driving, limited in her ability to shift

21   gears because of pain." *See* AR 19.   Further, as a marked exhibit, the ALJ's reference to a

22   "careful consideration of the entire record" (AR 17) would include this third party statement.

23   As recently explained in *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012):

24       Where lay witness testimony does not describe any limitations not already
         described by the claimant, and the ALJ's well-supported reasons for rejecting the
25       claimant's testimony apply equally well to the lay witness testimony, it would be
         inconsistent with our prior harmless error precedent to deem the ALJ's failure to
26       discuss the lay witness testimony to be prejudicial per se.

27

28                                           19

1   *Id*. at 1117.   Here, ALJ Treblin did not expressly reject the lay witness statement made a part of

2   the record by giving germane reasons for doing so.   *See* AR 15-24.   Nevertheless, this Court's

3   review of the statement reveals that it does not describe any limitation beyond that which

4   Plaintiff herself described.   More particularly, Ms. Weber's statement references Plaintiff's daily

5   struggle with pain in her back, hands and legs, her limited ability to lift a gallon of milk, and to

6   sit for long periods of time, and her struggles driving a car.   Yet, all of these symptoms or

7   conditions were testified to by Plaintiff herself.   *Cf*. AR 309-317, 322, 329-330, 333, 335, 338 to

8   AR 187.

9         In sum, because ALJ Treblin discussed and properly rejected Plaintiff's own credibility as

10   discussed below, any error in not expressly rejecting Ms. Weber's statement is harmless.   *Molina*

11   *v. Astrue*, 674 F.3d at 1121.

12         ***Plaintiff's Credibility***

13         Plaintiff argues that the ALJ erred by "giving only general reasons, such as lack of

14   clinical support and medication use, both refuted [], and allegedly robust daily activities,"

15   claiming those reasons were not specific to Plaintiff's limitations.   (Doc. 17 at 6-7.)   The

16   Commissioner asserts there is substantial evidence to support the ALJ's credibility findings.

17   (Doc. 20 at 22-26.)

18         A two step analysis applies at the administrative level when considering a claimant's

19   subjective symptom testimony.   *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the

20   claimant must produce objective medical evidence of an impairment that could reasonably be

21   expected to produce some degree of the symptom or pain alleged.   *Id*. at 1281-1282.   If the

22   claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the

23   claimant's testimony regarding the severity of his symptoms only if he makes specific findings

24   that include clear and convincing reasons for doing so.   *Id*. at 1281.   The ALJ must "state which

25   testimony is not credible and what evidence suggests the complaints are not credible." *Mersman*

26   *v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), internal quotations & citations omitted

27

28                                                                 20

1   ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible

2   renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by

3   substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be

4   sufficiently specific to make clear to the individual and to any subsequent reviewers the weight

5   the adjudicator gave to the individual's statements and reasons for that weight").

6        An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v.*

7   *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's

8   reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

9   testimony by the claimant that appears less than candid, unexplained or inadequately explained

10  failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

11  activities, claimant's work record, or the observations of treating and examining physicians.

12  *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  "An ALJ is not

13  'required to believe every allegation of disabling pain' or other non-exertional impairment."  *Orn*

14  *v. Astrue*, 495 F.3d at 635, citation omitted.

15       "Despite the inability to measure and describe it, pain can have real and severe

16  debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from

17  working."  *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  It is possible to suffer disabling

18  pain even where the degree of pain is unsupported by objective medical findings.  *Id.*  "In order

19  to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that

20  decision."  *Id.*, citing *Magallanes v. Bowen*, 881 F.2d at 755.  The findings must convincingly

21  justify the ALJ's rejection of the plaintiff's excess pain testimony.  *Id.* at 602.  However, an ALJ

22  cannot be required to believe every allegation of disabling pain.  "This holds true even where the

23  claimant introduces medical evidence showing that he has an ailment reasonably expected to

24  produce some pain."  *Id.* at 603.

25       The first step in assessing Plaintiff's subjective complaints is to determine whether

26  Plaintiff's condition could reasonably be expected to produce the pain or other symptoms

27

28                                    21

1    alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that

2    Plaintiff suffered from the severe impairments of status-post left shoulder surgery, status-post

3    right knee arthroscopic surgery, degenerative disc disease, obesity and bilateral shoulder

4    impingement syndrome.  AR 17.  Further, the ALJ concluded such conditions could be expected

5    to produce the pain or symptoms alleged.  AR 19.  This finding satisfied step one of the

6    credibility analysis.  *Smolen*, 80 F.3d at 1281-1282.

7          At step two of the credibility analysis, ALJ Treblin found as follows:

8          The claimant last attempted working as of May 2001, when she worked as
     a certified nurse assistant, and worked as a deliverer for a "Meals on Wheels"
9    program. The latter job ended when another driver that had been off work[]
     returned and replaced the claimant.
10         The claimant testified that she is unable to work because of right shoulder
     pain, difficulty with both hands and wrists (she is right handed), back pain, and
11   knee pain.  She has difficulty reaching out and to the sides, and difficulty grasping
     and holding objects with both hands.  Additionally she has asthma and has used
12   an inhaler for several years.  The claimant also testified that she has difficulty
     hearing out of her left ear, and has a goiter that will require surgery.  She testified
13   that she has diverticulitis, which prevents her from taking pain medications for her
     other impairments.  She is unable to take pain medications because of
14   diverticulitis.  Her thyroid medication makes her feel tired, spacey, short tempered
     and argumentative with people.  She sees her primary care doctor once a month to
15   check on her thyroid condition and medication monitoring. The claimant also
     testified that she wears a right ankle brace because of pain.  She estimated that she
16   can lift or carry 7-8 pounds at most, but is unable to lift anything overhead.  She
     can sit 20 minutes, and walk about 30 minutes.
17         The claimant described limited activities of daily living.  She lives in a
     trailer with her husband who is receiving Social Security disability.  She cooks
18   meals about once a month, bathes every 3-4 days, does dishes and makes her bed
     up.  However, she testified that after eating breakfast she takes her dog out, goes
19   for short walks, and rides a stationary bike for the equivalent of two miles.  She
     watches television, and has given up a former activity of mountain climbing.
20   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
           . . . [T]he undersigned finds that the claimant's medically determinable
21   impairments could reasonably be expected to cause the alleged symptoms;
     however, the claimant's statements concerning the intensity, persistence and
22   limiting effects of these symptoms are not credible to the extent they are
     inconsistent with the above residual functional capacity assessment.
23         The medical evidence does not support the severity, frequency, or intensity
     of symptoms as alleged by the claimant.  Also it appears she stopped working as a
24   deliverer because she was replaced by an employee with greater seniority status.
     There is no medical evidence of hearing impairment, no medical evidence of
25   recurring episodes of chest pain requiring the use of Dilatrate, and the claimant
     did not testify to recurrence of chest pain.  She frequently takes walks and rides a
26   stationary bike for 2 miles, without any report of chest pain or other pain

27

28                                              22

symptoms aggravated by this physical activity.  Additionally, there is no medical
evidence of any mental impairment as alleged in the Disability Report - Appeals.

AR 18-19.  ALJ Treblin then pointed out specific instances where Plaintiff's complaints were not

supported by the medical record.  AR 19-21.  For example, with regard to Plaintiff's complaints

of back and bilateral extremity pain, ALJ Treblin found:

> She sought treatment November 15, 2005 for knee pain.  X-rays and
> clinical observations were negative for any abnormal finding of injury or cause of
> her reported pain.  She complained of muscle cramps in her legs, left arm, and
> neck on July 10, 2006.  *The etiology was not determined, and she was treated
> with a short course of Soma.*  On December 29, 2007 she sought treatment for
> pain and was diagnosed with a back sprain, foot contusion, and fracture of right
> thumb.  After a fall injury in May 2008 involving her right ankle, leg and neck[,
> x]-rays of her ankle were obtained but showed no fracture or other defect.  The
> claimant reported being unable to bear any weight on her right foot, but given
> negative diagnostic studies, she was encouraged to begin walking, wearing a short
> leg splints, and [was to] follow up with her primary care doctor.  *She was not
> provided prescription medications, suggesting over-the-counter medications as
> needed for symptoms.*  She again sought treatment for back and leg pain on July
> 18, 2008.  Again x-ray studies were negative.  Joint spaces, bones, and soft tissues
> appeared normal throughout, but the examining doctor did detect some evidence
> of osteopenia.

AR 20, emphasis added & internal citations omitted.

ALJ Treblin offered several reasons for finding Plaintiff less than credible: her activities

of daily living, and the fact that the medical evidence does not support the severity of the

symptoms alleged by Plaintiff.  The ALJ also noted the fact that Plaintiff's numerous complaints

of pain have been treated with over the counter medications.  These reasons are clear and

convincing, and thus, proper.

An ALJ can look to daily living activities as part of the credibility analysis.  *Burch v.

Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Fair v. Bowen*, 885 F.2d at 603; *see also Thomas v.

Barnhart*, 278 F.3d at 958-59.  If a claimant is able to spend a substantial part of his day engaged

in pursuits involving the performance of physical functions that are transferable to a work setting,

a specific finding as to this fact may be sufficient to discredit a claimant's allegations.  *Morgan v.

Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  The ALJ must make

1   "specific findings relating to [the daily] activities" and their transferability to conclude that a

2   claimant's daily activities warrant an adverse credibility determination. *Orn v. Astrue*, 495 F.3d

3   at 639.

4          ALJ Treblin considered the facts that Plaintiff makes her bed, does the dishes, cares for

5   her dog, takes walks and rides a stationary bike for two miles each day. She also spends a

6   portion of her day watching television. AR 18-19. This Court finds there is sufficient evidence

7   to support the ALJ's finding regarding Plaintiff's activities of daily living as Plaintiff's activities

8   are varied and consistent with an individual capable of work. *Orn v. Astrue*, 495 F.3d at 639.

9          The ALJ also noted that the "medical evidence does not support the severity, frequency,

10  or intensity of symptoms as alleged" by Plaintiff. AR 19. A careful review of the medical record

11  establishes the accuracy of this statement. It is reasonable for an ALJ to consider the fact that no

12  treating or examining physician has found the claimant disabled. *See Matthews v. Shalala*, 10

13  F.3d 678, 680 (9th Cir. 1993); *see also Green v. Heckler*, 803 F.2d 528, 531 (9th Cir. 1986).

14  Further, it is reasonable for an ALJ to consider conservative treatment and negative or normal

15  test results as a basis for rejecting a claimant's testimony of severity of symptoms.

16  *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998); *Johnson v. Shalala*, 60 F.3d at 1434.

17         A lack of a significant pain regiment or therapy program may be considered in assessing

18  credibility. *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001). Plaintiff testified she does

19  not take pain medications because the side effects of those medications negatively impacts upon

20  her diverticulitis. Plaintiff has not cited any legal authority standing for the proposition that

21  failure to treat a condition is excused because the claimant alleges another condition would be

22  exacerbated by such medications. On this record, this Court finds no error with ALJ Treblin's

23  consideration of Plaintiff's lack of a pain medication regiment as it relates to her credibility.

24         Notably, even if the ALJ erred by relying upon Plaintiff's activities of daily living in his

25  credibility analysis, reversal is not required. Here, there is substantial evidence to support the

26  ALJ's conclusion that Plaintiff is capable of light work. *See Carmickle v. Commissioner of*

27

28                                          24

1  *Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (*citing Batson v. Comm. of Soc. Sec.*

2  *Admin.*, 359 F. 3d 1190, 1197 (9th Cir. 2004) ("So long as there remains "substantial evidence

3  supporting the ALJ's conclusions on . . . credibility" and the error "does not negate the validity of

4  the ALJ's ultimate [credibility] conclusion" such is deemed harmless and does not warrant

5  reversal").

6  **<u>RECOMMENDATION</u>**

7  Based on the foregoing, the Court finds that the ALJ's decision is supported by

8  substantial evidence in the record as a whole and is based on proper legal standards.

9  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

10 of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for

11 Defendant Michael J. Astrue and against Plaintiff Elizabeth Binion.

12 These findings and recommendations will be submitted to the Honorable Lawrence J.

13 O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).

14 Within fifteen (15) days after being served with these findings and recommendations, the parties

15 may file written objections with the Court.  The document should be captioned "Objections to

16 Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

17 objections within the specified time may waive the right to appeal the District Court's order.

18 *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

19

20

21

22 IT IS SO ORDERED.

23 **Dated:   February 1, 2013**                    **/s/ Gary S. Austin**

24                                                          UNITED STATES MAGISTRATE JUDGE

25

26

27

28                                                    25